# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **Wildlife Research Center, Inc.,** | **Civil No. 06-3745 (MJD / SRN)** |
| **Plaintiff,** | |
| **v.** | **REPORT & RECOMMENDATION** |
| **HME Products, LLC, and Terry A. Harmston,** | |
| **Defendants.** | |

J. Thomas Vitt, Bart Torvik, Dorsey & Whitney LLP, Suite 1500, 50 South Sixth Street, Minneapolis, MN 55402-1498, for Plaintiff.

James T. Nikolai & Peter G. Nikolai, Nikolai & Mersereau, P.A., 900 Second Avenue South, # 820, Minneapolis, MN, 55402, for Defendants.

SUSAN RICHARD NELSON, United States Magistrate Judge

This matter comes before the undersigned United States Magistrate Judge on Defendants' Motion To Dismiss or, In the Alternative, For Summary Judgment of Non-Infringement (Doc. No. 4) and Plaintiff's Cross-Motion For Summary Judgment of Infringement of Claims 1 and 7 (Doc. No. 19). The matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court recommends that the Defendants' motion be denied in part and denied in part as moot and that the Plaintiff's motion be granted.

## I.   FACTUAL AND PROCEDURAL HISTORY

Plaintiff Wildlife Research Center, Inc. is the assignee of U.S. Patent No. 6,158,668 ("the '668 Patent"). The '668 Patent generally describes a reusable hanging container for attracting game with a scented wick that hangs out of the bottom of the container such that the container protects the wick below from falling moisture. Plaintiff brought this action alleging that

Defendants' Seal Tite Drop Wick product infringes the '668 Patent.

As issued, the '668 Patent contains 16 claims, of which Claims 1, 7, 12 and 16 are independent, with the remaining claims depending from Claims 1, 7 or 12.  At issue are Claims 1 and 7, each of which is an independent claim that includes the following key claim limitation–that the container of the scent wick "protects the wick from falling moisture."  Claim 1 is representative:

> 1.    A reusable hanging container and scent wick therefore for attracting big game, comprising:
>
> a)    the container having a closed end with hanging means for supporting the container above the ground;
>
> b)    an opening into the container with a cap to sealably close the container; and [sic]
>
> c)    a scent wick for receiving a big game scent, the wick being of a size to fit within the container and to permit sealing of the container with the cap; an[d]
>
> d)    wherein the opening is on a bottom of the container and the scent wick is shaped to permit a substantial portion of the wick to fall out of the container to expose the scent wick <u>while the container above protects the wick from falling moisture</u>.

('668 Patent, col. 3, l. 56–col. 4, l. 3 (emphasis added).)

This patent infringement action is before the Court in a rather unusual procedural posture–on cross-motions for summary judgment of infringement (as well as a motion to dismiss) without an Answer having been filed and with only minimal discovery having been conducted.[1]  In lieu of an Answer, Defendants filed a motion to dismiss, contending that their product cannot infringe the '668 Patent because it does not eliminate all falling moisture from

---

[1] Defendant HME Products allowed Plaintiff to take its deposition as well as that of the company that performed testing services for Defendants.  (Doc. No. 16 (Letter to Judge Davis, dated Jan. 10, 2007).)

contacting the wick.  (Doc. No. 4.)  In the alternative, Defendants requested summary judgment

on essentially the same grounds.  (Id.)  In response, Plaintiff cross-moved for summary judgment

of infringement, claiming that Defendants' Seal Tite Drop Wick infringes Claims 1 and 7 of the

'668 Patent.  (Doc. No. 19.)

## II.     DISCUSSION

### A.      Introduction And Procedural Posture

In their motion to dismiss, Defendants argue that Plaintiff's Complaint must be dismissed

as a matter of law because Defendant's "scent wick container does not meet an important

limitation in each of the independent claims of Plaintiff's patent"–that is, it "does not, and

cannot, protect an exposed scent wick from falling moisture," which Defendants contend means

that "the container must 'eliminate moisture from falling onto the scent wick.'"  (Mem. at 1-2

(quoting '668 Patent) (emphasis added).)[2]

In the alternative, Defendants move for summary judgment of non-infringement on

essentially the same grounds and Plaintiff has filed a cross motion for summary judgment of

infringement of Claims 1 and 7.  In their Reply Brief, Defendants appear to have abandoned the

Rule 12 component of their motion, claiming that "[a]ll of the test data" submitted by both sides

shows that when Defendants' product "is subjected to falling moisture, the wick gets wet" and

---

[2]  Defendants denominated their motion as one (in part) under Rule 12(b)(6) for failure to state a claim.  (Doc. No. 4.)  But the substance of their motion challenged Plaintiff's ability to prove infringement under the claims construction Defendants advanced–that is, it was directed to the merits.  (Doc. No. 6 ("Plaintiff's Complaint fails to state a claim upon which relief can be granted and Defendants are entitled to summary judgment because the accused device does [not] meet an essential element of the patent claim.").)  Defendants were not challenging the sufficiency of the pleadings per se.  Cf. Phonometrics, Inc. v. Hospitality Franchise Systems, Inc., 203 F.3d 790, 794 (Fed. Cir. 2000) (addressing "liberal pleading standards of Rule 12(b)(6)" applicable to infringement complaints).  Accordingly, the Court questions whether a Rule 12 motion to dismiss was the proper vehicle by which to present their argument on the merits of non-infringement.

that "Defendant's container does not eliminate moisture from falling onto the scent wick."
(Reply Mem. at 1, 2 (emphasis in original).)  They thus assert that "[t]his undisputed fact is all
that is needed" for this Court to dispose "of this case by granting summary judgment in
Defendant's favor."  (Id. at 1.)

     Ruling on either motion first requires this Court to construe the claims.  At the oral
argument in this matter, the Court cautioned the parties that it would entertain only one claims
construction and that their respective requests for an early claims construction pursuant to their
present motions would preclude any further adjudication of that issue.  The parties
acknowledged the implications of the unusual posture of this case and of their respective
requests for relief.  They also agreed that construction of the claim term "protects the wick from
falling moisture" is the sole dispositive issue and that it is presently ripe for adjudication.[3]

     Accordingly, the Court agreed to construe the claims without the benefit of further
discovery.  Moreover, since the sole dispositive issue is fully framed by Plaintiff's motion for
summary judgment–which is the mirror image of Defendants' summary judgment motion–the
Court will proceed to those motions.[4]

---

[3]  In January 2007, Defendants declined Judge Davis' request that they withdraw their
motion to dismiss, claiming that the "issue is ripe for consideration at this time" because their
"non-infringement argument hinges on a single claim limitation," the meaning of which "can be
determined entirely from the patent's intrinsic record including its claims, its specification, and
its prosecution history."  (Doc. No. 16.)  Moreover, they stated that "[f]urther discovery on the
issue of whether the Defendants' wick gets wet would not be helpful to the disposition of
Defendants' motion."  (Id.)

[4]  Because Plaintiff has moved for summary judgment of infringement of Claims 1 and 7
on the precise ground relied upon by Defendants in their motion to dismiss, the motion to
dismiss should be denied as moot.

**B.  Claims Construction On Cross-Motions For Summary Judgment of Infringement**

The parties agree that the present dispute turns entirely on the meaning of the claim term "while the container above protects the wick from falling moisture," which is present in both Claims 1 and 7, the claims which Plaintiff alleges are infringed.  (Defs.' Reply Mem. at 1-2; Pls.' Mem. at 1.)  Accordingly, this Court need only construe that claim term and then determine whether Defendants' products infringe the '668 Patent.[5]

**1.  Basic Principles of Claims Construction**

Claim construction is a matter of law for the court.  <u>Markman v. Westview Instruments, Inc.</u>, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370, 372 (1996).  At issue are Claims 1 and 7 of the '668 Patent, particularly the claim limitation that "the container above protects the wick from falling moisture."  ('668 Patent, col. 4, ll. 2-3; <u>id.</u> col.4, ll. 33-34).

Defendants insist that this claim term must be construed narrowly to be consistent with a portion of the specification that provides that "[a]nother object and advantage of the present invention is that the hanging container protects the scent wick from above to <u>eliminate</u> moisture from falling onto the scent wick."  ('668 Patent, col. 2, ll. 15-17 (emphasis added).)  Plaintiff contends that this claim limitation cannot be understood to require complete or absolute protection.

In <u>Phillips v. AWH Corp.</u>, the Federal Circuit had occasion to reiterate and clarify the basic principles of claims construction.  415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc).[6]  "It is a

---

[5]  Any issues of invalidity (or other defenses) or of damages are not now before this Court.

[6]  The court noted that it had "summarized the applicable principles in *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996), and more recently in *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.,* 381 F.3d 1111 (Fed. Cir. 2004).  What we said in those

'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Id. (internal citation omitted).  The "words of a claim 'are generally given their ordinary and customary meaning,'" which "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Id. at 1312-13.  The understanding of such a person "provides an objective baseline from which to begin claim interpretation." Id. at 1313.  Importantly, such a person "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.

The Federal Circuit clarified that "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314.  But in other cases where claim terms "have a particular meaning in a field of art," the court "looks to" sources of meaning such as "'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" Id. (internal citation omitted).

The Phillips court also emphasized the importance of the claims themselves:  "Quite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms." Id.  But "[t]he claims, of course, do not stand alone.  Rather, they are part of 'a fully integrated written instrument,' consisting principally of a specification that concludes with the claims." Id. at 1315.  Thus, "the

---

cases bears restating, for the basic principles of claim construction outlined there are still applicable, and we reaffirm them today." Phillips, 415 F.3d at 1312.

specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." Id.

In addition, "a court 'should also consider the patent's prosecution history, if it is in evidence.'" Id. at 1317.  This component of the "intrinsic evidence" provides "evidence of how the PTO and the inventor understood the patent," but "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." Id.  Nevertheless, it is useful in determining whether the inventor limited the scope of the invention during prosecution, thereby "making the claim scope narrower than it would otherwise be." Id.

Extrinsic evidence, in contrast, "is less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" Id.  Generally, "extrinsic evidence may be useful to the court, but it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." Id. at 1319.

**2.    The Claim Term "Protects The Wick From Falling Moisture" Is Best Construed To Require Substantial But Not Absolute Protection**

Here, Defendants contend that the claim term at issue "means that 'the container protects the wick from above to eliminate moisture from falling onto the scent wick.'" (Mem. at 1 (quoting '668 Patent specification) (emphasis added).)  Defendants first focus on the "prepositional phrase 'from falling moisture' [that] modif[ies] the verb 'protects,'" contending that the Oxford English Dictionary defines the preposition "from" to mean "'negation of contact with a concrete or abstract object,'" such that the container must "negate contact with falling rain

or snow." (Mem. at 9 (emphasis in original).)[7] Defendants also assert that the specification's

discussion of protection requires that the container "<u>eliminate</u> moisture from falling onto the

scent wick." (<u>Id.</u> at 9-10 (emphasis added).) Finally, Defendants claim that the prosecution

history requires that "protect" means that "the container must do more than shed water." (<u>Id.</u> at

11-14.)[8]

Plaintiff counters by arguing that "'[p]rotects'" simply cannot be construed . . . to mean

'absolutely protects' or 'completely eliminates.'" (Reply Mem. at 1.) Rather, it should be given

"its plain and ordinary meaning: 'to cover or shield'" because in its "everyday usage, 'protects'

is not an absolute term." (<u>Id.</u>)[9] Furthermore, the "specification and prosecution history merely

confirm that the patentee intended this ordinary meaning." (<u>Id.</u>)

The Court agrees that the claim term at issue in the '668 Patent cannot be understood to

require complete or absolute protection from falling moisture. First, nothing in the ordinary

sense of the term "protects"–as it would be understood by one skilled in the art of

---

[7] Defendants' focus on the preposition "from" is artificially restrictive and somewhat evasive. In the usage at issue, neither "protects" nor "from" can be fully construed in isolation–protection is always a question of protection from something, here falling moisture. Thus, the entire claim term at issue, "protects from falling moisture," must be considered. Moreover, a different dictionary defines "from" as a "function word to indicate physical separation or an act or condition of . . . exclusion," such as "protection from the sun." <u>Merriam-Webster's Collegiate Dictionary</u> 468 (10th ed. 1993). Thus, the dictionary definition Defendants rely on to construe "from" to suggest the requirement of "absolute negation of contact" simply reframes the same problem in different terms and the question remains whether the protection at issue here is limited to absolute protection or also extends to a lesser degree of protection.

[8] Defendants' additional argument regarding the preferred embodiments is based substantially on their specification and prosecution history arguments. (Mem. at 14-17.)

[9] The Court notes that such a construction is consistent with the definition of "protect" provided by <u>Merriam-Webster's Collegiate Dictionary</u> 938 (10th ed. 1993) ("to cover or shield from exposure"). But "shield" is then defined as "to protect with or as if with a shield." <u>Id.</u> at 1080. Likewise, "cover" is defined as "to afford protection or security to." <u>Id.</u> at 268.

hunting–requires absolute or complete protection and nothing in how the term is used in the claims at issue suggests such a restrictive understanding.  Second, the specification as a whole does not require a restrictive understanding of the term and is entirely consistent with the construction Plaintiff advances.  Third, the prosecution history does not undermine this sense of the term.

As the Federal Circuit has noted, "[i]n some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."  Phillips, 415 F.3d at 1314.  Here, it seems that the ordinary meaning of the claim term "protects" is readily apparent to the layperson:  that "protects from falling moisture" means to provide substantial but not absolute protection.

Accordingly, there would be no need for recourse to sources of meaning such as "'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'"  Id.  But this Court need not make any such decision as to whether the meaning of the claim language is readily apparent because the Court reaches the same result even if it considers such additional sources of meaning.

The specification contains no clear basis to narrow the ordinary sense of the term "protects."  The Court first notes that the patentee did not choose to be his own lexicographer with respect to "protects":  there is no definition in the specification of this term.  But the specification is not without relevance here.  The specification first notes that many of the existing scent dispensers "simply do not protect the scent wick from" rain and snow.  ('668 Patent, col. 1, ll. 40-42 (emphasis added).)  This suggests that much of the prior art offered little

or no protection from falling moisture, such that even the addition of some substantial protection

would be an improvement over the prior art.  "Accordingly, it would be very desirable to have a

reusable hanging scent wick container, . . . [where] [t]he container should provide cover and

protection for the wick."  (Id., col. 1, ll. 48-51.)

Granted, the specification at one point provides that "[a]nother object and advantage of

the present invention is that the hanging container protects the scent wick from above to

eliminate moisture from falling onto the scent wick."  ('668 Patent, col. 2, ll. 15-17 (emphasis

added).)  But while the claims are read in light of the specification, "one may not read a

limitation into a claim from the written description."  Renishaw PLC v. Marposs Societa' Per

Azioni, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  Moreover, this particular "object and advantage"

of the invention is immediately followed by "[a]nother object and advantage"–that is, "that the

container readily permits the extension of the scent wick out of the container to provide

maximum exposure of the wick into the ambient air in sufficient quantities to attract an animal."

('668 Patent, col. 2, ll. 19-23 (emphasis added).)

A patent specification should be read "'as a whole'" so as to "'read all portions of the

written description, if possible, in a manner that renders the patent internally consistent.'"

Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc., 429 F.3d 1364, 1373 (Fed. Cir. 2005) (internal

citation omitted).  Here, these two "objects and advantages" are to some degree in opposition to

each other:  while it is necessary to expose the wick to the air–and optimal to provide "maximum

exposure"–in order to facilitate the invention's basic function of attracting an animal, such

exposure to the air would seem to necessarily also expose the wick to the elements, including

precipitation, thereby diluting the scent.  In other words, exposing the wick to the ambient air

seems to necessarily preclude complete protection from falling moisture.  While complete

protection from falling moisture would be beneficial, even ideal, such protection appears to be not as essential as the exposure of the wick to the ambient air and would be of dubious benefit if achieved at the cost of severely limiting, if not outright precluding, exposure to the ambient air.

The claims, being the concluding part of the specification, do not stand alone.  But "[q]uite apart from the written description and the prosecution history, the claims themselves provide substantial guidance as to the meaning of particular claim terms."  Phillips, 415 F.3d 1314.  "Absent a special and particular definition created by the patent applicant, terms in a claim are to be given their ordinary and accustomed meaning."  Renishaw PLC, 158 F.3d at 1249.  Accordingly, if a claim term "is expressed in general descriptive words," the court "will not ordinarily limit the term to a numerical range that may appear in the written description or in other claims."  Id.  Nor will the court "in the broader situation, add a narrowing modifier before an otherwise general term that stands unmodified in a claim."  Id.

Here, the patentee did not specially define "protects" and did not restrict that general claim term by prefacing it with any narrowing modifier such as "absolutely" or "completely." Thus, the specification–read as a whole and subject to the express claim language–does not support Defendants' construction of the term "protects from falling moisture" so as to require the elimination of all such moisture.  The single reference in the specification to the sense of absolute protection that Defendants propose does not necessarily support limiting the claims accordingly.  To permit this single reference to restrict the ordinary sense of the term "protects" would impermissibly read a limitation into the claims.  Renishaw PLC, 158 F.3d at 1248.

Focusing on the preferred embodiments, Defendants also contend that the specification "does not describe how the container in Figs. 1 or 2 'protects' the wick from falling moisture." (Mem. at 16.)  "Therefore, Figs. 1 and 2 show unclaimed embodiments which cannot be

enjoined." (Id. at 17.)  Defendants thus conclude that "[b]ecause the embodiments shown in

Figs. 1 and 2 . . . obviously would not 'eliminate' falling moisture from contacting the wick, the

claims do not cover the first two embodiments."  (Id.)

But it is rarely correct to construe a claim term such that a preferred embodiment in the

specification "would not fall within the scope of the patent claim."  Vitronics Corp. v.

Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996) ("Such an interpretation is rarely, if

ever, correct and would require highly persuasive evidentiary support.").[10]  As Plaintiff notes, the

first two preferred embodiments, which are depicted in Figures 1 and 2, are "quite different"

from the third preferred embodiment, which is depicted in Figures 3 and 4.  (Reply Mem. at 7-8.)

With respect to the first two, the wick falls out through an opening in the bottom of the

container, which being above the wick protects it from falling moisture.  With respect to the

third, in contrast, the wick remains within the sides of the container.  Plaintiff thus argues that

Defendants' narrow construction of the claim term at issue would result in Claims 1 through

15–all of which require "'an opening into the container' which is located on the 'bottom of the

container'"–not covering the preferred embodiments depicted in Figures 1 and 2.

Moreover, as Plaintiff points out, Claims 1 through 15 clearly do not cover the preferred

embodiments of Figures 3 and 4, which do "not have 'an opening into the container located on

the bottom of the container'" through which the scent wick falls out.  (Reply Mem. at 9.)  "So

claims 1-15 clearly do not cover the third  preferred embodiment."  (Id.)  "Thus, if Defendants'

claim construction were correct, claims 1-15 would not cover *any* of the preferred embodiments

_____

[10]  Defendants rely on Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc., 214 F.3d
1302 (Fed. Cir. 2000), for the proposition that "there is no irrefutable presumption that the
claims cover even one of the embodiments disclosed in the specification."  (Mem. at 17.)
Granted, there will be a "rare case in which such an interpretation is compelled," Elekta
Instrument S.A., 214 F.3d at 1308, but this is not one of them.

described in the specification." (<u>Id.</u> (emphasis in original).)  In sum, Defendants' restrictive understanding of the claim term at issue is not supported by the preferred embodiments.

Nothing in the prosecution history contradicts the Court's construction of "protects" to require substantial but not absolute protection.  Defendants contend that "there are two rejections and revisions" relevant to the construction of the term "protect":  (1) that claim 1 was allowed only after adding "the requirement that the 'container above protects the wick from falling moisture'" (which originally had been the limitation of dependent application claim 2), thus showing that protection was necessary; and (2) that the rejection of application claim 6 as being anticipated by the Beck patent and as obvious in light of the Fisher patent shows that "merely shedding water does not fall within the definition of 'protection'" because "both Fisher and Beck had a closed end that shed moisture" such that a "container that shed water was both anticipated and obvious in light of" Beck and Fisher.  (Mem. at 11-12.)

According to Defendants, "[t]his demonstrates that the term 'protection' was essential to the patentability of the claim, and that Beck and Fisher (the references upon which the original rejection was based) did not 'protect' the wick." (<u>Id.</u>)  Thus, Defendants conclude, the "prosecution history makes all too clear that 'protects' means more than to shed moisture–it must mean to 'eliminate' falling moisture"–or the '668 Patent is invalid.  (<u>Id.</u> at 12.)

The Court disagrees.  The Court first notes that the claim limitation at issue here was not narrowed during prosecution.  As issued, the '668 Patent includes sixteen claims.  Claims 1 and 7, both of which are independent claims containing the claim limitation at issue, are asserted as infringed here.  As originally submitted, the application contained 17 claims.  Application claims "8, 12, and 17" were "allowed" immediately.  (Doc. No. 7 (Affidavit of Peter G. Nikolai), Ex. B, Part 2, at 2.)  Application claim 8 provided as follows:

8.      A reusable hanging container and scent wick therefore for attracting big game, comprising:

      a)      the container having a closed end with hanging means for supporting the container above the ground;

      b)      an opening into the container located on the bottom of the container with a cap to sealably close the container; and

      c)      a scent wick for receiving a big game scent, the wick being of a size to fit within the container and to permit sealing of the container with the cap, the scent wick is shaped to permit a substantial portion of the wick to fall out of the container to expose the scent wick while the container above protects the wick from falling moisture.

(Id., Part 1, at 22.)  Application claim 8 became–without alteration–Patent Claim 7.  Thus, the

claim limitation "protects the wick from falling moisture"–contained in Claim 1 as well as in

Claim 7–was not narrowed.

With respect to application claims 1 and 2, the application originally read as follows:

1.      A reusable hanging container and scent wick therefore for attracting big game, comprising:

      a)      the container having a closed end with hanging means for supporting the container above the ground;

      b)      an opening into the container with a cap to sealably close the container; and

      c)      a scent wick for receiving a big game scent, the wick being of a size to fit within the container and to permit sealing of the container with the cap.

2.      The container and scent wick of claim 1 wherein the opening is on a bottom of the container and the scent wick is shaped to permit a substantial portion of the wick to fall out of the container to expose the scent wick while the container above protects the wick from falling moisture.

(Id. at 20.)

The Examiner rejected application claim 1 as anticipated by Fisher, which as the

Examiner explained "shows a reusable hanging container and scent wick comprising a container

. . . having a closed end with hanging means . . . an opening . . . into the container with a cap . . . and a wick . . . for receiving a big game scent." (Id., Part 2, at 4.)  The Examiner also rejected application claim 1 (as well as application claim 6) as anticipated by Beck, which as the Examiner explained "shows a reusable hanging container and scent wick comprising a container . . . having a closed end with hanging means . . . an opening into the container with a cap . . . and a wick . . . for receiving a big game scent." (Id. at 4-5.)

The Examiner objected to application claim 2 (as well as to application claim 7) "as being dependent upon a rejected base claim," that is, application claim 1, but noted that they "would be allowable if rewritten in independent form including all of the limitations of the base claim and any intervening claims." (Id. at 6.)  The Examiner explained that with respect to application claims 2 and 8 (as well as 13), the

> prior art does [not] wholly show or teach the <u>combination</u> of a reusable container and scent wick where the opening of the container is located on the bottom of the container <u>and</u> where the scent wick is shaped to permit a substantial portion of the wick to fall out of the container to expose the scent wick while the container above protects the wick from falling moisture.

(Id. (emphases added).)  Accordingly, with respect to application claims 1 and 2, the applicant explained that he had "canceled claim 2 and incorporated its limitations into independent claim 1." (Id. at 21.)  As issued–that is, the applicant having combined application claims 1 and 2–Claim 1 thus provides:

> 1.    A reusable hanging container and scent wick therefore for attracting big game, comprising:
>
>        a)    the container having a closed end with hanging means for supporting the container above the ground;
>
>        b)    an opening into the container with a cap to sealably close the container; and [sic]
>
>        c)    a scent wick for receiving a big game scent, the wick being of a

size to fit within the container and to permit sealing of the container with the cap; an[d]

d)      wherein the opening is on a bottom of the container and the scent wick is shaped to permit a substantial portion of the wick to fall out of the container to expose the scent wick while the container above protects the wick from falling moisture.

(Id., Part 1, at 9.)  As discussed above, application claim 8 was retained as originally filed but renumbered Claim 7 (because application claim 2 was folded into application claim 1).

Accordingly, the fact that Beck included an element that it "shed some moisture" does not mean that the '668 Patent as issued must be construed to be limited to absolute protection from falling moisture so as to be patentable over Beck (or Fisher).  Rather, the subject matter was allowable because it was a combination of (1) a reusable container and scent wick and (2) where the wick was shaped to permit a substantial portion of it to fall out of that container.  The novel aspect of the invention was not using a container to protect the wick from the elements as that was a feature of previous inventions including Beck and Fisher, which conceivably protected the wick by using the top of the container to shed moisture.

As originally submitted, application claim 6, which depended from application claim 1, provided as follows:  "The container and scent wick of claim 1 wherein the closed end of the container is roof shaped to quietly shed moisture."  (Id. at 20.)  The examiner rejected application claim 6 because it did not include the limitation that "a substantial portion of the wick [ ] fall out of the container," a limitation that was part of application claim 2, but not of application claim 1 from which application claim 6 depended.  (See id., Part 2, at 5 (rejecting application claim 6 as obvious in light of Fisher).)  But once application claims 1 and 2 were combined into what was then issued as independent Claim 1, this basis for rejection no longer existed.  Application claim 6 was not rejected, as Defendants suggest, because it failed to require

16

absolute protection so as be patentable over Beck and Fisher.

The true basis for the rejection of application claim 6 is evident from the prosecution history with respect to application claims 8 and 12.  Application claim 12, which likewise claimed "[t]he container and scent wick of claim 8 wherein the closed end of the container is roof shaped to quietly shed moisture," was thus substantively identical to application claim 6. (Id., Part 1, at 20, 22.)  But application claim 12 was not rejected; rather it was "allowed" immediately because it depended from application claim 8, which already included the requirement that "a substantial portion of the wick [ ] fall out of the container," and thus was not objectionable.  (Id. at 22.)  Accordingly, while Fisher and Beck arguably protect their wicks by having the top of the container shed moisture, neither included the combination of such a container and a scent wick that falls out of that container.

As rewritten, application claims "1 and 3-17" were thus "allowed."  (Id., Part 2, at 23.) The examiner allowed Claims 7 and 16 (originally submitted as application claims 8 and 17)–which contain the limitation at issue–as they were originally submitted without any modification.  (Id. at 2.)  Similarly, the Examiner allowed Claim 1 (originally submitted as application claim 2) once it was "rewritten in independent form including all of the limitations of the base claim."  (Id. at 6.)  But it is clear that the particular claim terms at issue here were not required to be rewritten or otherwise narrowed.  The examiner simply required the applicant to combine independent application claim 1 and dependent application claim 2 into a single independent claim, which then issued as Claim 1.

In short, application claims 1, 2, and 6 were not rejected for being anticipated by prior art that already shed moisture.  In other words, the claims as issued need not require the absolute protection from falling moisture so as to be patentable over prior art that disclosed the function

17

of (merely) shedding (some) moisture.  In sum, the prosecution history does not support

Defendants' proposed construction of the claim term at issue.

Accordingly, the Court construes the claim term "protects the wick from falling

moisture" to require substantial, but not absolute or complete, protection from such moisture.

### C.    Defendants' Seal Tite Drop Wick Product Infringes Claims 1 and 7

"Because the determination of infringement is a question of fact, summary judgment of

infringement is improper if a reasonable jury could find that not every limitation of the claim in

question would be met by the [alleged infringer's] product."  Abbott Labs. v. Torpharm, Inc.,

300 F.3d 1367, 1373 (Fed. Cir. 2002).  In addition, the accused infringer "is entitled to have all

of its evidence believed, and all justifiable inferences drawn in its favor."  Id.

Here, however, only one claim limitation is at issue and the Court's construction of that

claim eliminates any material factual issues regarding infringement.  Defendants assert that

based on their tests, "[a]t best, Defendants' container sheds water, but does not protect the wick

from falling moisture," as it "does not negate contact with falling moisture."  (Mem. at 18, 19.)

But this Court has already rejected Defendants' construction of "protects" that would require

complete elimination of falling moisture.  Under the Court's construction of the claim term at

issue, Claims 1 and 7 read on such a product even if it does not stay absolutely dry.

Moreover, Plaintiff's testing expert concluded that Defendants' product "provides a

significant level of protection to the wick."  (Mem. at 10; see Doc. No. 24 (Declaration of

William Welbes), ¶ 22.)  The parties' respective test results regarding Defendants' product are

not necessarily inconsistent:  whereas Defendants characterize their tests as showing that some

falling moisture still gets on the wick and Plaintiff asserts that its tests show that the container

provides some protection from falling moisture, these two views are simply two sides of the

18

same coin. In effect, the parties agree that while the wick of Defendants' product gets wet when

subject to falling moisture, it nevertheless provides substantial protection from such moisture.[11]

Thus, as Plaintiff contends, "[u]nder the proper construction of the term 'protects,' no reasonable

jury could find for the defendants." (Mem. at 20.) Accordingly, on this record, Plaintiff is

entitled to summary judgment of infringement of Claims 1 and 7 of the '668 Patent.

## III. CONCLUSION

The Court construes Claims 1 and 7 of the '668 Patent–specifically the claim limitation

that the container "protects the wick from falling moisture"–to require that the container provide

some substantial, but not absolute, protection from falling moisture. Based on this claim

construction–and in light of the parties' agreement that construction of this claim term would be

dispositive of the issue of infringement–Plaintiff is entitled to partial summary judgment of

infringement of Claims 1 and 7. Accordingly, only the issues of invalidity (and any other

defenses) and damages remain.[12]

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, IT IS

HEREBY RECOMMENDED that:

1.    Defendants' motion to dismiss or, alternatively, for summary judgment of non-

---

[11] Although Defendants had supported their motion to dismiss with an affidavit regarding the results of tests they conducted on their product (Doc. No. 8 (Affidavit of Terry Harmston)), they did not offer any expert opinion to rebut that of Plaintiff's expert filed in support of Plaintiff's motion for summary judgment, even though Plaintiff's expert opined that Defendants' testing suffered from several "serious flaws." (Doc. No. 24 (Welbes Decl.), ¶ 33.) Rather, Defendants responded only with attorney argument. (See Doc. 33 (Defs.' Reply Mem.).)

[12] Any such invalidity defenses remain only to the extent they would not be contingent on the claims construction that Defendants advanced in the present motions and which this Court has rejected.

infringement (Doc. No. 4) be DENIED IN PART AS MOOT (insofar as it seeks dismissal under Rule 12) and DENIED IN PART (insofar as it seeks summary judgment of non-infringement under Rule 56); and

       2.     Plaintiff's motion for partial summary judgment of infringement of Claims 1 and 7 (Doc. No. 19) be GRANTED.

Dated:  August 6, 2007

                            s/ Susan Richard Nelson

                            SUSAN RICHARD NELSON
                            United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by August 21, 2007, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.